## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Hollis Larson,                                                    Civil No.: 06-3664 (PAM/AJB)

                Petitioner,

vs.                                                                      **REPORT AND RECOMMENDATION**

Joan Fabian, Commissioner of Corrections,

                Respondent.

_____

### I. Introduction

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on Respondent's Motion to Dismiss [Docket No. 44] Hollis Larson's petition [Docket No. 1] to 28 U.S.C. § 2254 for habeas corpus relief by a person in state custody, as well as Petitioner's motion for partial summary judgment [Docket No. 31]. The action has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c).

Hollis Larson ("Petitioner") is a Minnesota state prison inmate serving time for multiple convictions of criminal sexual conduct in Anoka County, Minnesota, in 1992, and in Goodhue County, Minnesota, in 1993. Petitioner was found guilty by an Anoka County jury of first and second-degree sexual conduct and was committed to the Commissioner of Corrections ("COC") for 25 years. In Goodhue County, Petitioner was convicted on four counts of first-degree criminal sexual conduct and one count of second-degree sexual conduct. Petitioner was sentenced to 86 months to run consecutive to his Anoka County sentence and 158 months to run concurrent with that sentence.

1

Petitioner now seeks relief under an application for writ of habeas corpus.  Petitioner asserts

the following claims in this habeas corpus action:

(1)  Petitioner has been falsely imprisoned, denied due process, and subjected to cruel and
unusual punishment because Respondent failed to properly apply state law and denied a
reduction in Petitioner's sentence for good time;

(2)  Petitioner has been subjected to unconstitutional statutes regarding his sentence and term of
imprisonment;

(3)  Petitioner's state-created, constitutionally protected liberty interest in his previously earned
and vested good time is being violated because Respondent took away that time and is
keeping Petitioner in custody for his entire sentence;

(4)  Petitioner's state-created, constitutionally protected liberty interest in being released on a
specific date has been violated;

(5)  Petitioner has been falsely imprisoned and denied due process by keeping him in
segregation past his release date;

(6)  Petitioner has been falsely imprisoned and denied due process by Minnesota Correction
Facility ("MCF")-Stillwater staff altering his segregation plea agreement from concurrent to
consecutive sentences;

(7)  Respondent lacked jurisdiction and had no probable cause to issue an arrest warrant and
arrest Petitioner for alleged release violations;

(8)  Petitioner has been denied due process because he was not afforded a preliminary hearing
before the revocation of his supervised release;

(9)  Petitioner was falsely imprisoned and denied due process by the lower court's ruling that
habeas corpus could not be used to challenge Petitioner's illegal imprisonment[1] two years
after the illegal imprisonment;

(10)  Petitioner has been falsely imprisoned and denied due process when Respondent applied
laws enacted after Petitioner's date of offense requiring him to complete sex offender;

---

[1]  Petitioner states: "State law mandates that petitioner should have been released on a Thursday since his release
date fell on a Sunday.  Respondent failed to apply that statute, so petitioner was held until the following Monday,
but petitioner was illegally placed in segregation on the Sunday before his release and illegally held in segregation
for a number of months before finally being released." Pet'r Pet. App. 2 [Docket No. 1].

2

(11) Petitioner has been denied due process when Respondent applied laws in an *ex post facto* manner that placed Petitioner on Intensive Supervised Release ("ISR");

(12) Petitioner has been denied due process when Respondent applied laws in an *ex post facto* manner that then required Petitioner to register as a sex offender and provide community notification;

(13) Petitioner has been denied due process and his state-created, constitutionally protected liberty interest in serving a supervised release term in the state of which he is a legal resident has been violated; and

(14) Petitioner has been denied due process of law because the Minnesota state district court refused to hold an evidentiary hearing, failed to appoint counsel, and rule on numerous pleadings by Petitioner.

Respondent opposes Petitioner's § 2254 motion asserting that all of Petitioner's claims should be dismissed for several reasons: (1) Petitioner has not exhausted his state remedies; (2) some of the issues Petitioner raises are barred by 28 U.S.C. § 2254(d)(1)(A) one-year statute of limitations; (3) some of the issues raised are solely state law issues; (4) there is no need for the Court to hold an evidentiary hearing on the habeas petition; and (5) none of the issues raised involves an unreasonable application of clearly established federal law. See Resp't Answer 10-11 [Docket No. 44].  For the reasons stated below, it is recommended that the petition [Docket No. 1] be **dismissed with prejudice**.

## II. Background

### A. Anoka County

S.L. was 13 in 1998.[2]  Prior to the summer of 1988, S.L. had enjoyed a close relationship with her uncle, Petitioner.  However, during the summer of 1988, S.L. claimed that during a family reunion held at her aunt's resort Petitioner penetrated her vagina with his finger and then with his penis.  Later

---

[2] Facts compiled from Minnesota Court of Appeals decision—State v. Larson, 1993 WL 412998 (Minn. Ct. App. Oct. 19, 1993)(hereinafter "*Larson I*").

that same summer, S.L. stayed at the resort without her parents for a few weeks.  Petitioner, who was

working at the resort as a handyman, lived in his sister's basement.  Over that summer, S.L. alleged that

Petitioner forced her to have sexual intercourse some "15, 10, 20 times."  When asked at trial why she

allowed Petitioner's abuse to continue, S.L. responded, "Cuz I was so afraid of him."

On another occasion, S.L.'s aunt saw S.L. and Petitioner asleep in bed together.  Although

S.L. denies that her aunt ever asked about the incident, her aunt testified that she asked S.L. what was

going on.  According to the aunt, "[S.L.] didn't want to talk about it, she—she was embarrassed too."

The next incident occurred in 1990 when Larson was staying with S.L. and her family at her

parent's home in Anoka County.  According to S.L., after the family had gone to bed, Larson began

rubbing her leg and said he wanted to have sex with her.  She told him to stop and that she was having

her menstrual period.  Not believing her, Petitioner removed her shorts, underpants, and tampon.

Petitioner then pulled down his pants and had her rub his penis with her hand.

### B. Goodhue County

M.M was 15 in 1990.[3]  Petitioner was the maternal uncle of M.M.  M.M. accused Petitioner of

having sexual intercourse with her on two occasions in October and November 1990.  The first incident

occurred at her aunt's home and resort in Renville County.  During the early morning hours, while the

rest of the family slept, M.M. was awake and talking with Petitioner about her personal problems.

After Petitioner offered M.M. a beer, he began kissing her and fondling her breasts beneath her

clothing.  He removed her clothing and engaged in sexual intercourse with her.  M.M. recalled

struggling to push Petitioner away, but she does not remember if that occurred before, during, or after

---

[3] Facts compiled from Minnesota Court of Appeals decision—State v. Larson, 520 N.W.2d 456 (Minn. Ct. App. 1994)(hereinafter "*Larson II*").

the assault.  Shortly thereafter, Petitioner went upstairs saying something to the effect of, "If Kay [the

aunt] comes home, we are dead."  M.M. cried and felt numb; she said nothing to her family.

The second incident occurred in 1990 over Thanksgiving weekend when Petitioner was a guest

at M.M.'s parents' house.  M.M.'s parents left to do farm chores early in the morning, leaving

Petitioner alone with their three daughters.  Petitioner came to M.M. while she was in her bedroom and

demanded sex with her.  M.M. declined.  Although M.M. could not remember Petitioner's exact

words, she understood what he said as a threat "that if I didn't have sex with him, he would have sex

with my little sisters."  At that time, M.M's sisters were between the ages of four and seven.  M.M.

agreed to intercourse[4], but refused Petitioner's demand to perform fellatio.  M.M. said nothing of this

incident to anyone until she saw her cousin S.L. visibly upset after speaking with Petitioner at a family

Christmas party in 1990.  In a very brief conversation, the girls both admitted to each other that they

had been sexually involved with Petitioner, but exchanged no further details.  M.M. and S.L. did not

discuss the assaults again until S.L. went to the police.

## III. Procedural Status

### A. Anoka County

In November 1991, S.L. reported Petitioner's conduct, first to her boyfriend, then to the

police.[5]  Petitioner was charged with criminal sexual conduct in the first degree, in violation of Minn.

Stat. § 609.342, subdiv. 1(h)(v) (1988), for his conduct at his sister's resort; with criminal sexual

conduct in the second degree, in violation of Minn. Stat. § 609.343, subdiv. 1(g) (1990), for what

---

[4] At trial, M.M. explained that she agreed to intercourse with Petitioner because "it was me or them, you know…I
mean, they were little kids, you know.  It just seemed the lesser of the two evils."
[5] Facts compiled from Minnesota Court of Appeals decision—*Larson I.*

transpired at S.L. parents' home in 1990; and criminal sexual conduct in the second degree under

Minn. Stat. § 609.343, subdiv. 1(g) (1990), for a third incident in 1990.

Following a jury trial, Petitioner was convicted on the first two counts.  For Count One,

Petitioner was committed to the COC for 25 years and sentenced to 107.5 months in prison, with

authorization for supervision after release for an additional 107.5 months.  For Count Two, Petitioner

was sentenced to a concurrent term of 44 months.[6]

### B. Goodhue County

M.M. filed a complaint with the police in November 1991.[7]  The Goodhue County Attorney

charged Petitioner with three counts of first-degree criminal sexual assault and one count of second-

degree sexual assault.  Petitioner waived his right to counsel and a jury trial.  The trial court found

Petitioner guilty as charged.  Given that Petitioner was already serving time for the crimes against S.L.,

the trial court sentenced him on Count I to 86 months imprisonment consecutive to his Anoka County

sentence, and 158 months under Count IV concurrent with the Anoka County sentence.

### C. Petitioner's Sentence and Appeals

Petitioner unsuccessfully appealed both the Anoka County and Goodhue County convictions.

*Larson I*; rev. denied (Minn. Dec. 14, 1993); *Larson II;* rev. denied (Minn. Oct. 14, 1994).

Petitioner also appealed a denial of post conviction relief for his Goodhue County sentence to no avail.

Larson v. State, 1997 WL 309364 (Minn. Ct. App. June 10, 1997)(hereinafter "*Larson III*); rev.

---

[6] On the state's motion for clarification of Petitioner's sentence, the trial court amended the penalty for Count One, committing Petitioner to the COC for 20 years with release to be "determined by the commissioner of corrections after an undetermined portion of the sentence has been completed." See *Larson I*, at *2.  However, the Minnesota Court of Appeals reversed the trial court and affirmed the original sentencing order's upward departure from the sentencing guidelines (i.e. 25 years). Id. at *5; see also Resp't App. 60 [Docket No. 44].
[7] Facts compiled from Minnesota Court of Appeals decision—*Larson II.*

denied (Minn. Aug. 5, 1997). Petitioner also sought habeas corpus relief in 1995, without success, claiming his good time credits were improperly computed and that denying his good time credits due to discipline deprived him of due process. Larson v. Wood, 1996 WL 571438 (Minn. Ct. App. Oct. 8, 1996)(hereinafter "*Larson IV*"); rev. denied (Minn. Nov. 20, 1996).[8]

Petitioner began serving time for the Anoka County convictions on November 16, 1992. His original sentence was initially determined to expire on August 8, 2005.[9] Petitioner was subsequently released on ISR[10] on June 17, 2003. However, Petitioner was taken back into custody for violation of the terms of that release on August 23, 2003. A revocation hearing was held on September 2, 2003. At the hearing, Petitioner's release was revoked and Petitioner was assigned 365 days confinement with the requirement that he complete a treatment program. See Resp't App. 521-22. In May 2006, an audit of Petitioner's file resulted in the correction of his sentence to conform to the sentence imposed by the Anoka County District Court. Petitioner's current sentence expiration is December 23, 2016. Id. at 605-06.

Petitioner next filed a petition for writ of habeas corpus with the Washington County District Court on January 11, 2005. Id. at 333. On June 9, 2005, the Washington County District Court dismissed the petition with prejudice and denied relief. Id. at 323. Subsequently, Petitioner appealed that decision to the Minnesota Court of Appeals on July 8, 2005. Id. at 300. Petitioner raised 17 issues on appeal and the court grouped these issues generally into questions relating to (1) probable

---

[8] These opinions are set forth in Resp't App.—*Larson I*, at *1 (Resp't App. 239); *Larson II*, at 456 (Resp't App. 243); *Larson III*, at *1 (Resp't App. 252); and *Larson IV*, at *1 (Resp't App. 254).

[9] In *Larson I*, the Minnesota Court of Appeals reinstated the original sentence remanding Petitioner to the custody of the COC for a period of 25 years with 107.5 months to be served in prison and 107.5 months to be served on ISR. Resp't App. 242.

[10] The "intensive supervised release" program provides close surveillance of high-risk sex offenders recently released from prison. See also Minn. Stat. § 244.05, subdiv. 6 (1990).

cause and habeas corpus procedures; (2) discovery; (3) convictions and sentencing; (4) representation by defense counsel; and (5) procedures used and sanctions imposed by the COC. <u>Larson v. Fabian</u>, 2006 WL 1320474, at *1 (Minn. Ct. App. May 16, 2006)(hereinafter "*Larson V*"); <u>see</u> <u>also</u> Resp't App. 173.  Nonetheless, the Minnesota Court of Appeals affirmed the Washington County decision. Resp't App. 175.

Petitioner then filed a petition for review with the Minnesota Supreme Court on May 30, 2006. <u>Id.</u> at 4.  On July 19, 2006, the Minnesota Supreme Court by order denied Petitioner's request for counsel, granted his request to proceed *in forma pauperis*, waived the court's filing rules, and denied further review of his petition. <u>Id.</u> at 1.

## IV. Respondent's Motion to Dismiss Petitioner's Claims

The present petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 was filed in the United States District Court for the District of Minnesota on September 8, 2006.

### A. Petitioner's Exhausted Claims

Before a federal court may reach the merits of a claim in a habeas petition by a state prisoner, it must first determine whether the prisoner has fairly presented his federal constitutional claims to the state court. <u>Duncan v. Henry</u>, 513 U.S. 364, 365-66 (1995).  For a claim to be fairly presented "a petitioner is required to refer to a <u>specific federal</u> constitutional right, a <u>particular constitutional</u> provision, a <u>federal constitutional</u> case, or a state case raising a pertinent federal constitutional issue." <u>Cox v. Burger</u>, 398 F.3d 1025, 1031 (8th Cir. 2005)(emphasis added).  Petitioner "must have informed the state court of both the factual and legal premises of the claim." <u>Cox v. Lockhart</u>, 970 F.2d 448, 453-54 (8th Cir. 1992).  A claim that is not fairly presented in state court before raising it in

federal court will be procedurally defaulted. <u>Burger</u>, 398 F.3d at 1031.  Petitioner's Claims 2, 3, 8, 10,

and 11 all fairly presented specific constitutional issues and federal rights to the state court.  Therefore,

the Court will address the merits of each of these claims:

### (1)  Claim 2-Sentence and Terms of Imprisonment

Federal habeas relief is available only to a person in custody in violation of the Constitution or

laws or treaties of the United States. 28 U.S.C. § 2254(a); <u>Estelle v. McGuire</u>, 502 U.S. 62, 68

(1991)(citing <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975)).  The Anti-terrorism and Effective Death

Penalty Act of 1996 ("AEDPA") sets forth the standards that govern the federal district court's review

of habeas corpus claims raised by state prisoners.  The relevant portion of the AEDPA, 28 U.S.C. §

2254(d), provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim…
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established Supreme Court precedent if it

"applies a rule that contradicts the governing law set forth in [Supreme Court cases] or if it confronts a

set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless

arrives at a result different from Supreme Court precedent." <u>See</u> <u>Early v. Packer</u>, 537 U.S. 3, 8

(2002)(citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).

However, interpretation and application of state law is not subject to habeas corpus review

since federal habeas corpus relief does not lie for errors of state law. Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Pulley v. Harris, 465 U.S. 37, 41 (1984). "Determinations of state law made by a state court are binding on a federal court in habeas proceedings" Lupien v. Clarke, 403 F.3d 615, 619 (8th Cir. 2005)(citing Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir. 1998); Williamson v. Jones, 936 F.2d 1000, 1004 (8th Cir. 1991)). Moreover, state law determinations decided by a state court are not reviewed, even under the "deferential standard of 28 U.S.C. § 2254(d)." Id. (citing Lee v. Gammon, 222 F.3d 441, 443 (8th Cir. 2000)). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. Even if a decision can be characterized as a "mixed" question of law and fact, any such determination would nevertheless remain a question of state law, errors of which are not cognizable in federal habeas proceedings. Lewis, 497 U.S. at 782-83.

In Claim 2, Petitioner asserts that he has been "falsely imprisoned in violation of the Supremacy Clause of Article VI of the U.S. Constitution, the Ex Post Facto Clauses of Art. I, § 9, cl. 3 and Art. I, § 10, cl. 1 of the U.S. Constitution, the 8th Amendment guarantee against cruel and unusual punishment, deprived of life and liberty without due process of law and equal protection in violation of his 5th and 14th Amendment rights by respondent misconstruing statutes in effect at petitioner's date of offense and misapplying statutes enacted after petitioner's date of offense, to petitioner's sentence." See Resp't App. 338. More specifically, Petitioner claims that 18 U.S.C. § 4205 (a) and (b), even though repealed, applies to the calculation of his sentence.

Petitioner contends that 18 U.S.C. § 4205 (a) and (b) requires the state to find him eligible for parole after serving one-third of his sentence. However, federal parole law only applies to those

sentenced under federal law and incarcerated in federal institutions, which Petitioner is not. § 4205 applies only to federal crimes committed prior to Nov. 1, 1987, and had an effective repeal date of October 31, 2002. See 42 U.S.C. § 4201-4218. Neither his petition nor memorandum to this Court cite to any relevant federal precedent which might alter the state court's interpretation and application of the statutory sentencing laws.[11]   Therefore, this claim should be dismissed.

### (2) Claim 3-Good Time

Petitioner argues in Claim 3 that he possesses a "state-created liberty interest, protected by the 5th and 14th Amendments to the U.S. Constitution, in not having his good time taken away after it has been earned and vested [and that] [t]his action by respondent denies petitioner of due process of law, equal protection, and is cruel and unusual punishment." See Resp't App. 348. While the Court concludes that this claim has been fairly presented, Petitioner's disputes this claim as an improper interpretation and application of state law. Id. at 349. Particularly, the Department of Corrections ("DOC") staff allegedly took away Petitioner's earned and vested good time as for violating prison rules after January 30, 2003, using Minn. Stat. § 244.04 as their rationalization. Id.   Petitioner has made no showing of how the state's decision to take away Petitioner's earned and vested good time, because Petitioner violated his supervised release, resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court.[12]   Hence, the Court concludes that this claim should be dismissed.

### (3) Claim 8-Failure to have Preliminary Hearing

---

[11] The Minnesota Court of Appeals in *Larson V* held that Petitioner's Claim 2 had no merit because due to the fact Petitioner "erroneously relie[d] on federal law respecting his 'good time' calculations." Resp't App. 175.

[12] In *Larson V*, the Minnesota Court of Appeals found no merit to Petitioner's Claim 3 due to the fact that Petitioner "fail[ed] to show how [his 'good time'] calculations under state law were erroneous." Id.

In Claim 8, Petitioner maintains he "was denied procedural due process, due process of law, and equal protection because he was not given a probable cause hearing after his arrest for alleged supervised release violations." <u>See</u> Resp't App. 354.   Petitioner contends he should have been entitled to a preliminary hearing upon arrest to determine whether probable cause existed to believe that the he had committed a violation based on <u>Morrissey v. Brewer</u>, 408 U.S. 471 (1972). <u>Id.</u> at 55.

In <u>Morrissey</u>, the Supreme Court held that the possible deprivation of liberty inherent in parole revocation proceedings entitles a parolee to minimum due process protections. <u>Morrissey</u>, 408 U.S. at 482.  The Court suggested that part of this should be a preliminary hearing at, or near the time of arrest, to determine whether probable cause exists to believe that the parolee has committed a violation. <u>Id.</u> at 485-89.  The Court reasoned that a preliminary determination of probable cause was necessary because (1) there is often a substantial time lag between the arrest and the eventual parole revocation determination; and (2) the parolee is often arrested at a place distant from the state institution. <u>Id.</u> at 485.  The Supreme Court did not intend to lay down a rigid set of procedures to be followed in all cases:

> <u>Given these factors</u>, due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is still fresh and sources are available. <u>Id.</u> (emphasis added).

Under the facts of <u>Morrissey</u>, the two-hearing requirement was just one way to satisfy minimum due process; it is not the only way in every case.  For example, in <u>Pierre v. Wash. St. Bd. of Prison Terms & Paroles</u>, 699 F.2d 471, 473 (9th Cir. 1983), an on-site hearing conducted only 21 days after parole was suspended was found to be prompt enough to qualify as the preliminary probable cause determination required by <u>Morrissey</u>.  In <u>Pierre</u>, an informal administrative review was conducted by

12

the Parole Board without Pierre present. Id. at 471.  Upon finding probable cause, the Board

scheduled an on-site parole revocation hearing to be held 13 days later.  The court concluded that due

process does not require a preliminary hearing when the final parole revocation hearing is promptly

held. Id. at 473.

Even if the court finds that a probable cause hearing should have been conducted, the failure to

do so does not provide grounds *per se*, for habeas relief.  Such relief (for delay of due process

protections) is only available when the petitioner establishes that the delay was both unreasonable and

that he was prejudiced by it.  Parson v. Edward, 709 F.Supp. 548, 552 (M. D. Pa. 1988)(citing

Sutherland v. McCall, 709 F.2d 730 (D.C. Cir. 1980)).

In Petitioner's case, his subsequent conduct upon his arrest negates any claim that he was

unduly prejudiced.  Petitioner was arrested on August 23, 2003, based upon a warrant issued by OAR

upon the written request of Agent Truax. Resp't App. 517-20.  Due to his disruptive behavior,

Petitioner was sent to MCF-Oak Park Heights.  His revocation hearing was held on September 2,

2003, only 10 days after he was taken into custody.  At his revocation hearing, Petitioner refused to

cooperate and was removed from the proceeding. Resp't App. 521-22.  Considering these facts,

Petitioner cannot now claim prejudice through the lack of a formal preliminary hearing, based on due

process considerations, when he failed to cooperate and to participate in the revocation hearing.  Claim

8 should therefore be dismissed.

### (4) Claim 10-Ex Post Facto Application of State Law

In Claim 10, Petitioner alleges he is being falsely imprisoned, denied due process, and

subjected to *ex post facto* application of laws by Respondent requiring him to complete sex offender

13

treatment under Minn. Stat. § 244.05, subdiv. 6 (2004) before he is eligible for release. See Resp't App. 356-58. Petitioner's ISR was revoked for 365 days with the requirement that Petitioner complete sex offender treatment before being eligible for release from prison. Petitioner argues that sex offender treatment programs were voluntary under Minn. Stat. § 244.03 (1990). After 1990, Petitioner asserts there were disciplinary sanctions for not participating in the programs.

Both the state district court and Minnesota Court of Appeals found that the Commissioner had the authority to impose the sex offender treatment requirement under the laws in effect when Petitioner was convicted and therefore, that this requirement did not constitute *ex post facto* application of law. See Resp't App. 173, 328-30. Since the requirement of sex offender treatment involved application of state law it is not subject to federal habeas review and Claim 10 should therefore be dismissed. See Lupien, 403 F.3d at 619.

Furthermore, the *Ex Post Facto* Clauses of the Constitution prohibit, *inter alia*, "[e]very law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." Id. at 618-19 (8th Cir. 2005)(citing Stogner v. California, 539 U.S. 607, 612 (2003)). A law is *ex post facto* if it is enacted after the offense is committed to which it applies and it alters the offender's situation to his or her disadvantage. Even though a statute may disadvantage a defendant, it is only *ex post facto* if it punishes, as a crime, an act that would have been innocent under prior law, if it aggravates a crime previously committed, provides greater punishment, or if it changes the quantity of degree of proof necessary to establish guilt. Dobbert v. Florida, 432 U.S. 282, 294 (1977)(quoting Hopt v. Utah, 110 U.S. 574, 589-90 (1884)); see also Collins v. Youngblood, 497 U.S. 37, 52 (1990)(to constitute an *ex post facto* law, a statute must: (1) punish as a crime an act which was

14

innocent when committed; (2) increase the burden of punishment for a crime after its commission; or (3) deprive one charged with a crime of a defense that was available when it was committed).

Petitioner speculates that Respondents wrongly applied Minn. Stat. § 244.03. Resp't App. 357.  However, Minn. Stat. § 244.03 is not penal in nature.  Rather, it is a rehabilitative program, which Petitioner is required to complete before he is eligible for release.  Failure to complete the program does not add additional punishment, such as an additional sentence, beyond that which has been imposed upon Petitioner.  In fact, application of the Minn. Stat. § 244.03 did not result in Petitioner receiving additional punishment for the crimes he was sentenced to in 1992 and 1993. Petitioner is still sentenced to 25 years of imprisonment.  The only effect of Petitioner not completing treatment has been to extend his possible early release date.  Petitioner can choose not to participate in sex offender treatment, but cannot escape the adverse consequences of that refusal.  Because Minn. Stat. § 244.03 does not impose any additional punishment on Petitioner or aggravate the crimes previously committed by Petitioner[13], it does not violate the prohibition against *ex post facto* laws and the Court recommends that Claim 10 be dismissed.

### (5) Claim 11-Intensive Supervised Release

In Claim 11, Petitioner maintains he was denied due process and equal protection, and subjected to *ex post facto* application of laws when Respondent placed Petitioner on ISR. See Resp't App. 349-52.  Petitioner claims he was placed on ISR pursuant to Minnesota statutes and laws enacted after 1988 or 1990. See Resp't App. 351.  Petitioner also asserts that there were no statutes at that time giving the COC authority to place Petitioner on ISR. Id.

---

[13] This statute does not change the quanity of proof necessary to establish guilt or punish a crime previously held to be legal.

Similar to Claim 10, both the state district court and Minnesota Court of Appeals found that the Commissioner had the authority to impose ISR on Petitioner under the laws in effect when Petitioner was convicted and that this requirement did not constitute *ex post facto* application of law. Resp't App. 173, 328-29.  Since this claim concerns application and interpretation of <u>state</u> law it is not subject to federal habeas review and should therefore be dismissed. <u>See</u> <u>Lupien</u>, 403 F.3d at 619.

**B. Petitioner's Unexhausted Claims**

**(1) Exhaustion**

Generally, a federal court cannot consider the merits of a habeas petition filed by a state prisoner unless the petitioner has exhausted all of the available state court remedies with respect to each of the claims that are presented to the federal court. <u>See</u> 28 U.S.C. § 2254(b) & (c).  The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law, which means that states should be given the initial opportunity to address and correct alleged violations of state prisoner's federal rights. <u>Coleman v. Thompson</u>, 501 U.S. 722, 731 (1991).  A claim is exhausted "when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim." <u>Krimmel v. Hopkins</u>, 56 F.3d 873, 876 (8th Cir. 1995).  Also, a prisoner must proceed through one full round of the state's appellate review process whereby the state's established appellate review process is given one full opportunity to resolve any constitutional issues. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).[14]

In Minnesota, "A party may appeal from a final decision of the Court of Appeals to the Supreme Court only with leave of the Supreme Court." MINN. R. CRIM. PRO. 29.02. subdiv. 2

---

[14] Note that in circumstances in which a state has a two-tiered appellate review system, comity requires that review be at both appellate levels before the claims may be presented in federal court. <u>Id.</u> at 845.

(2006).  Failure to seek review of a claim at the required state appellate levels constitutes non-exhaustion of that claim.

As previously stated, a claim may not go forward under 28 U.S.C. § 2254 if the claim has not been fairly presented.  The court will "ask not only whether a prisoner has exhausted his state remedies, but also whether he has *properly* exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts." Boerckel, 526 U.S. at 848.  To be fairly presented "a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue." Burger, 398 F.3d at 1031.  Petitioner "must have informed the state court of both the factual and legal premises of the claim." Lockhart, 970 F.2d at 453-54.

With respect to Petitioner's remaining claims and the issue of fair presentation of those claims:

(a) In Claim 1, Petitioner contends that he has been falsely imprisoned, denied due process, and subjected to cruel and unusual punishment because Respondent failed to properly apply state law when COC denied a reduction in Petitioner's sentence for good time. See Resp't App. 343.  Petitioner forms this claim as a violation of state rights.[15]  This claim was not fairly presented because Petitioner failed to inform the state court of the specific federal or constitutional legal premise underlying this claim. See Wydles, 69 F.3d at 251;

(b)  In Claim 4, Petitioner maintains that his state-created, constitutionally protected liberty

---

[15] A state prisoner does not "fairly present" a claim to a state court if that state court must read beyond a petition or brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material that does so. Baldwin v. Reese, 541 U.S. 27, 32 (2004).  While petitioners are not required to "cite book and verse on the federal constitution" to satisfy the fair presentment requirement, "the constitutional substance of a claim must be apparent," and the petitioner "must have explicitly referred the state courts to the United States Constitution or federal case law." Wyldes v. Hundley, 69 F.3d 247, 251 (8th Cir. 1995)(internal quotations omitted)(emphasis added).

interest in being released on a specific date has been violated. <u>See</u> Resp't App. 346.  This

claim, however, was not fairly presented because it addresses no specific constitutional

right or issue and simply relies on application and interpretation of state law. <u>See Lupien</u>,

403 F.3d at 619;

(c) In Claim 5, Petitioner argues that he has been falsely imprisoned and denied due process by

keeping him in segregation past his release date. <u>See</u> Resp't App. 347.  False imprisonment

and due process are both federal and state rights.  Petitioner's vague assertions to those

rights cause this claim to be unfairly presented to the state court as <u>specific federal</u> or

constitutional issues. <u>See Wydles</u>, 69 F.3d at 251;

(d) In Claim 6, Petitioner asserts that he has been falsely imprisoned and denied due process by

MCF-Stillwater staff when they allegedly altered his segregation plea agreement from

concurrent to consecutive sentences. <u>See</u> Resp't App. 348.  This claim also lacks reference

to any <u>specific federal</u> constitutional right and is therefore not fairly presented. <u>See Wydles</u>,

69 F.3d at 251;

(e) In Claim 7, Petitioner alleges he has been denied due process and equal protection because

Respondent lacked jurisdiction and had no probable to issue an arrest warrant and arrest

Petitioner for alleged release violations. <u>See</u> Resp't App. 354-56.  Petitioner, however, has

failed to show how the state courts' decision on this claim conflicts with established federal

precedent. <u>See Early</u>, 537 U.S. at 8.  Furthermore, Petitioner's mere mention of due

process and equal protection is insufficient in notifying the state court to the <u>specific</u>

constitutional issues or federal rights violated. <u>See Wydles</u>, 69 F.3d at 251.  In conclusion,

18

Claim 7 is not fairly presented and for that reason is not subject to federal habeas review.

(f) In Claim 9, Petitioner says that he has been falsely imprisoned and denied due process by the lower court's ruling that habeas corpus could not be used to challenge Petitioner's illegal imprisonment two years after the alleged illegal imprisonment. See Resp't App. 346. Petitioner's claims false imprisonment and denial of due process because Respondent misapplied state law.  This claim was never presented as a federal issue and was therefore not fairly presented. See Lupien, 403 F.3d at 619;

(g) In Claim 12, Petitioner argues that he has been denied due process when Respondent applied laws in an *ex post facto* manner, which required Petitioner to register as a sex offender and provide community notification. See Resp't App. 359.  As stated above, Petitioner's mere mention of due process is not adequate or clear enough in alerting the state court to the specific constitutional issues or federal rights violated and thus was not fairly presented. See Wydles, 69 F.3d at 251.  Moreover, Petitioner shapes this claim as a misapplication of state law by the state courts, which is not subject to federal habeas review. See Lupien, 403 F.3d at 619;

(h) In Claim 14, Petitioner argues that he was denied due process since the district court refused to hold an evidentiary hearing, failed to appoint counsel, and did not rule on numerous pleadings he filed. See Resp't App. 292-293.  Although denial of due process can be construed as a federal issue it can also be a state issue when presented in such vague reference as it is here. See Wydles, 69 F.3d at 251.  Therefore, this claim was not fairly presented by Petitioner because it failed to refer to a specific federal constitutional

19

right;

(i)  In Claim 13, Petitioner alleges that he was denied due process and his state-created,

constitutionally protected liberty interest was violated because he was not allowed to serve

a supervised release term in the state in which he was a resident. See Resp't App. 352-53.

Petitioner shapes this claim as a violation of his state liberty interest. See Lupien, 403 F.3d

at 619.  Petitioner contends that he was a resident of South Dakota per Minn. Stat. §

243.16[16] and that he should have been transferred to South Dakota thereby not subjecting

Petitioner to ISR in Minnesota.  Nevertheless, this claim by Petitioner also lacks reference

to any specific federal right and is therefore not fairly presented.

Petitioner made no specific reference to any federal constitutional rights concerning the remaining claims

above, or any other specific constitutional right, particular constitutional provision, federal constitutional

case, or state case raising a pertinent federal constitutional issue.  Petitioner poorly informed the state

court of the legal premises of his claims.  Therefore, Petitioner's Claims 1, 4-7, 9, and 12-14 were not

fairly presented and were not exhausted.

### (2) Procedural Default

When a petitioner has failed to fairly present federal claims in state court, the federal court must

determine whether the state procedural rules would allow hearing the claims on the merits in a

subsequent state court proceeding. McCall v. Benson, 114 F.3d 754, 757 (8th Cir. 1997).  If state

procedural rules preclude hearing petitioner's claims on the merits, the petitioner has procedurally

defaulted unless the petitioner is able to demonstrate either cause for her default and actual prejudice or

---

[16] This statute was repealed on July 1, 2006.

20

that the failure to consider were claims would result in a fundamental miscarriage of justice. Id. at 758.

Under Minnesota law, once a direct appeal has been taken, all claims that were raised on direct appeal and all claims that were known or should have been known but were not raised will not be considered upon a subsequent petition for post-conviction relief. White v. State, 711 N.W.2d 106, 109 (Minn. 2006)(citing Hanley v. State, 534 N.W.2d 277, 279 (Minn. 1995); State v. Knaffla, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976)).   Petitioner's unexhausted claims were raised on post-conviction appeal to the Minnesota Court of Appeals[17] and motioned for review to the Minnesota Supreme Court.[18]   However, Minnesota law precludes further court review of those claims if not raised on direct appeal. Id.   Since Petitioner has already completed his state appeals and all of Petitioner's unexhausted claims could have been raised as federal issues on those appeals, Petitioner is barred from subsequently raising those claims on petition for post-conviction relief.[19]

### (a) *Cause & Prejudice/Fundamental Miscarriage of Justice*

Once a claim has procedurally defaulted this Court cannot review the claim on the merits unless the petitioner is able to demonstrate either cause for default and actual prejudice or that failure to consider the claim would result in a fundamental miscarriage of justice. McCall, 114 F.3d at 758. "To demonstrate prejudice, a petitioner must show that the errors of which he complains worked to his *actual* and substantial disadvantage, infecting his entire [hearing] with error of constitutional dimensions." Charron v. Gammon, 69 F.3d 851, 858 (8th Cir. 1995).  Petitioner has failed to carry the burden of showing the cause and prejudice required to avoid procedural default and subsequent dismissal of his remaining claims.

---

[17]   Resp't App. 172.
[18]  Resp't App. 4.
[19] See 28 U.S.C. § 2254(b)(1)(A).

The fundamental miscarriage of justice exemption is only available to a petitioner who demonstrates "that a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>McCall</u>, 114 F.3d at 758.  Petitioner fails to allege any constitutional violation that would have overturned his conviction.  Petitioner has not even attempted to show that he was actually innocent.

### V.  Petitioner's Motion for Summary Judgment

On November 3, 2006, Petitioner filed a motion for partial summary judgment [Docket No. 31].[20]  Federal Rules of Civil Procedure 56 covering summary judgment is generally held to apply in habeas corpus proceedings pursuant to Rule 11 of the Rules Governing Habeas Corpus Cases.[21] However, Rule 11 "permits application of the civil rules only when it would be appropriate to do so," and would not be "inconsistent or inequitable in the overall framework of habeas corpus." Rule 11 advisory committee notes; <u>see</u> <u>also</u> <u>Mayle v. Felix</u>, 545 U.S. 644, 654 (2004).  In light of the recommendation that Petitioner's three claims for summary judgment be dismissed on the merits or by way of procedural default, the Court holds that application of the civil rules for summary judgment would not be appropriate and Petitioner's motion for summary judgment should therefore be deemed moot.

---

[20] Petitioner sought partial summary judgment on 3 claims: (1) Petitioner's state-created, constitutionally protected liberty interest in his scheduled release date was violated by Respondent, resulting in Petitioner being denied due process and being falsely imprisoned in violation of the 5th, 8th, and 14th Amendments to the U.S. Constitution; (2) Petitioner's state-created, constitutionally protected liberty interest in his previously earned and vested good time was violated by keeping Petitioner in segregation past his scheduled release date; and (3) Petitioner's current imprisonment is in violation of the 5th, 8th, and 14th Amendments because he has earned and vested all available good time for his sentences and any further imprisonment constitutes revocation of that earned and vested good time. <u>See</u> Pet. Mem. Summ. J. 2-5 [Docket No. 32].

[21] Rule 11 states, "The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the statutory provisions or these rules, may be applied to a proceeding under these rules [Section 2254 cases]"; <u>see</u> <u>also</u> Fed. R. Civ. P. 81(a)(2)(The civil rules "are applicable to proceedings for...habeas corpus.")

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceeding herein, **IT IS HEREBY**

**RECOMMENDED** that:

1. Respondent's Motion to Dismiss [Docket No. 44] should be **granted**, and the Petition

   under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [Docket

   No. 1] should be **dismissed with prejudice**.

2. Petitioner's Motion for Partial Summary Judgment [Docket No. 31] should be **denied as**

   **moot**.

DATED:   June 25, 2007

    s/ Arthur J. Boylan

Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before July 12, 2007.